IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                              Cr. No.  20-20125-MSN

JOVANNI AGUIAR-VIERA,

        Defendant.

## DEFENDANT'S MOTION TO SUPPRESS
## AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, Jovanni Aguiar-Viera ("Mr. Aguiar-Viera"), by and through his counsel of record, Serena R. Gray, Assistant Federal Defender, pursuant to Federal Rule of Criminal Procedure 12(b)(3), and for his Motion to Suppress, states as follows:

### FACTUAL BACKGROUND

On June 25, 2020, Mr. Aguiar-Viera's physical movements were tracked and reported via his cellular phone GPS location for approximately one and a half hours before West Tennessee Drug Task Force ("WTDTF") conducted a traffic stop. The agent that conducted the traffic stop alleged that Mr. Aguiar-Viera's window tint was too dark, and the license plate was improperly displayed. Subsequent to the stop, Mr. Aguiar was asked to exit the vehicle and he was questioned, which later led to him giving consent to search his vehicle. Mr. Aguiar-Viera's passenger was also asked to step out of the vehicle.

After over an hour-long search on the side of the interstate, nothing was found. When the search yielded no findings, Mr. Aguiar-Viera and his passenger were handcuffed, placed in the

1

back of police cars and transported to another location. The vehicle was then driven to another location by one of the officers on the scene. Both men were placed in holding cells for an unknown amount of time while the vehicle is dissembled and "taken apart" and drugs were allegedly located.

## **ARGUMENT**

The Fourth Amendment protects the "right of people to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. The Fourth Amendment thus prohibits "'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). The Sixth Circuit has recognized "three types of permissible encounters between the police and citizens" under the Fourth Amendment: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010) (internal quotations and citations omitted).

Furthermore, the Sixth Circuit asserts in *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) that:

> [t]o justify a brief, investigative stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an officer must point to specific, articulable facts that gave rise to a "reasonable suspicion" that the suspect was engaged in criminal activity. *Id.* at 21, 88 S.Ct. 1868. "A reasonable suspicion exists when, based on the totality of the circumstances, a police officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *United States v. Baldwin,* 114 Fed.Appx. 675, 679 (6th Cir.2004) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citations and internal quotation marks omitted).

2

The stopping of a vehicle and the detention of its occupants is undeniably a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 662-63 (1979). Here, WTDTF's encounter with Mr. Aguiar-Viera can best be defined as an investigative detention absent any reasonable articulable suspicion. Furthermore, it is well settled that the *Terry* doctrine applies to investigative stops of a moving automobile. *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). Thus, assuming they have reasonable suspicion, the officers could lawfully stop a defendant's vehicle and briefly detain him for investigatory purposes.

When evidence is obtained as a result of an unconstitutional search or seizure, it is inadmissible in federal court. *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 654 (1961)). This is the exclusionary rule and it "is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *Id.* (citations omitted). The overarching purpose of the exclusionary rule is to deter unlawful government behavior and compel respect for "the constitutional guaranty in the only effectively available way –by removing the incentive to disregard it. *Gross,* 662 F.3d at 401, (citing *Elkins v. United States* 364 U.S. 206, 217 (1960)). Thus, "the indirect fruits of an illegal search or arrest should be suppressed when they bear sufficiently close relationship to the underlying illegality". *Gross*, 662 F.3d at 401 (citing *New York v. Harris*, 495 U.S. 14, 19 (1990).

Mr. Aguiar-Viera avers that there was no reasonable articulable suspicion to support the *Terry* stop initiated by the WTDTF in this case, which ultimately resulted in his arrest. Moreover, he avers that the investigative detention and inquiry into him was unconstitutional and unwarranted. For these reasons, Mr. Aguiar-Viera respectfully requests this Court to suppress all evidence found as a result of the illegal traffic stop as well as all statements made thereafter.

**(A)     There was not a proper basis for the traffic stop.**

When courts evaluate the reasonableness of a *Terry* stop, they engage in a two-part analysis. *United States v. Mays*, 643 F.3d 537, 541 (6th Cir. 2011) (citation omitted). First, the court must "ask whether there was a proper basis for the stop." *Id*. (quoting *United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010)). If the stop was proper, the court must then "determine whether the degree of intrusion . . . was reasonably related in scope to the situation at hand." *Id.* at 542.

Consistent with the Fourth Amendment, a police officer may effect a traffic stop if the officer "possess[es] either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Here, WTDTF fabricates reasons to stop and seize Mr. Aguiar-Viera.

In this case, the only action that WTDTF witnessed was Mr. Aguiar-Viera driving before finally pulling the vehicle over for the windows allegedly being too dark and the license plate allegedly being improperly displayed, which was a ruse for their true intentions for pulling him over.

WTDTF had been tracking the physical movements of Mr. Aguiar-Viera for an hour and a half from Arkansas into Tennessee via his cell phone GPS location. They were reporting to one another and lying in wait for his arrival, and when he did not commit any traffic infraction after continued monitoring, they created one. The Supreme Court in *Carpenter v. United States,* 138 S.Ct. 2206, 2217 (2018)*,* held that individuals have a reasonable expectation of privacy in their physical movements as captured through historical cell cite location information ("CSLI"). Consequently, this is yet another reason that the stop and ensuing search was unlawful.

As such, WTDTF lacked the requisite reasonable articulable suspicion that any criminal activity was being committed. Therefore, Mr. Aguiar-Viera respectfully requests that the Court grant his motion to suppress because there was no basis for the stop.

### B. The degree of intrusion was not reasonably related in scope to the situation at hand.

Should the Court find that there was a reasonable basis for the stop, Mr. Aguiar-Viera avers that the degree of intrusion was not reasonably related in scope to the purpose of the traffic stop. A police officer's actions after conducting an investigatory stop must reasonably relate to the circumstances which justified the stop in the first place. *See Terry*, 392 U.S. at 20. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Moreover, the officer should employ the least intrusive means reasonably available to investigate his suspicions in a short period of time. *Id*. In determining the reasonableness of the detention, the proper inquiry is whether during the detention, the officer diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Importantly, "a seizure that is lawful at its inception can [still] violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)). More specifically, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.*; see also *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185-86 (2004). Once the purpose of a traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention. *United States v.*

5

*Blair*, 524 F.3d 740, 752 (6th Cir. 2008) (quotations and citation omitted). Reasonable suspicion requires that an officer have "articulable reasons and a particularized and objective basis" for assuming criminal activity is afoot. *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003). Upon applying the foregoing legal precepts, the detention of Mr. Aguiar-Viera was excessive in scope and unreasonable in duration.

In this case, WTDTF not only conducted a traffic stop absent any violation of any local, state, or federal law; they kept Mr. Aguiar-Viera on the side of the road and searched his vehicle for approximately one and a half hours. When they did not find anything, Mr. Aguiar-Viera was then handcuffed and placed in the back of a police car and relocated to another location. Moreover, an officer then drives his vehicle to another location, and WTDTF disassembled and cut into the frame of Mr. Aguiar-Viera's vehicle to continue their search. His continuous detention and search of his car exceeded the scope and purpose for the stop.

Even if the initial *Terry* stop was illegal, it is anticipated that the Government will argue that Mr. Aguiar-Viera gave consent to search his car. However, "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness- what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Florida v. Jimeno,* 500 U.S. 248, 251 (1991) (citing *Illinois v. Rodriguez, supra,* at 183-189, 110 S.Ct., at 2798-2802; *Florida v. Royer,* 460 U.S. 491, 501-502, 103 S.Ct. 1319, 1326-1327, 75 L.Ed.2d 229 (1983)). No reasonable person would construe that their consent to search would result in the complete disassembly and destruction of their vehicle. Here, like in *Florida v. Jimeno*, Mr. Aguiar-Viera's continued confinement went beyond the limited restraint of a *Terry* stop, and his consent was tainted by the illegality of WTDTF.

Furthermore, the Sixth Circuit has found that reasonable suspicion for a stop cannot be based on events that occur after one is seized. *United States v. Johnson*, 620 F.3d 685, 696 (6th Cir. 2010)(citing *United States v. McCauley*, 548 F.3d, 440, 443 (6th Cir. 2008); *United States v. Blair*, 524 F.3d 739, 751(6th Cir. 2008)).

Perhaps, even more disturbing, were the actions of WTDTF after their search on the side of the interstate was not fruitful. An officer gets into the driver seat and drives the vehicle to another location to be torn apart at the frame using tools and devices and searched. As previously stated, clearly, these actions exceeds a reasonable person's consent to search.

Mr. Aguira-Viera also recognizes that there exists an inventory exception to the exclusionary rule, as an inventory search of a vehicle conducted without a warrant does not violate the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371-74 (1987); United States v. Hockenberry, 730 F.3d 645, 658 (6th Cir. 2013) (quoting *Bertine*, 479 U.S. at 371). Warrantless inventory searches may be conducted when police lawfully take custody of a vehicle. *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007). An inventory search of a vehicle must be conducted "according to standard police procedures" and may not be undertaken "for purposes of investigation." *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998); see also *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). "In conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy." *Tackett*, 486 F.3d at 232 (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990) (stating that police must follow an established routine and not engage in "rummaging")). It is the Government's burden to show by a preponderance of the evidence that the inventory exception applies. See, e.g., *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002); *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971)

7

("The burden is on those seeking the exemption to show the need for it") (quotations and citations omitted).

Here, this most certainly was not an inventory search because officers had no reason to tow the vehicle before finding the contraband. In fact, officers did not find anything until after an officer drove the vehicle to another location. As such, the evidence in this case must be suppressed under Sixth Circuit jurisprudence.

Without any articulable reasonable suspicion that criminal activity was afoot, this degree of intrusion was simply not reasonably related in scope to the situation at hand. For these reasons, Mr. Aguiar-Viera respectfully requests the Court to grant his motion and suppress all evidence found as a result of the traffic stop and the statements made thereafter.

## CONCLUSION

There was no proper basis for the *Terry* stop in this case. WTDTF lacked any reasonable suspicion of criminal activity because they only witnessed driving of a vehicle. Furthermore, the continued detention and inquiry as to Mr. Aguiar-Viera was excessive in scope and unreasonable in nature.

WHEREFORE, for all of the foregoing reasons, Mr. Aguiar-Viera respectfully requests this Court to suppress all evidence found as a result of the illegal traffic stop and all statements made thereafter.

Respectfully submitted,

DORIS RANDLE HOLT
FEDERAL PUBLIC DEFENDER

s/ Serena R. Gray
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(90) 544-3895

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to Ms. Melanie Cox, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this 11th day of February, 2021.

s/ Serena R. Gray
Assistant Federal Defender